# JOHNSON *v.* MUESER.

PATENTS; INTERFERENCE; APPEALS; BURDEN OF PROOF.

1. The patentability of the issue in an interference proceeding is not a jurisdictional fact without which there can be no determination of priority of invention; and in such a proceeding this court will not review the action of the Patent Office in deciding that the issue is a patentable one, but will confine its consideration to the question of priority alone. (Following *Hisey* v. *Peters*, 6 App. D. C. 68; *Doyle* v. *McRoberts*, 10 App. D. C. 445; *Sobey* v. *Holsclaw*, 28 App. D. C. 65; and *Kreag* v. *Geen*, 28 App. D. C. 437; and citing *Allen ex rel. Lowry* v. *United States*, 26 App. D. C. 8.)

2. The burden upon a junior party to an interference is heavily increased by unanimous decisions against him by the Patent Office tribunals.

3. In an interference proceeding involving an improvement in corrugated metal bars used in concrete steel construction, the court, upon a review of the testimony, and under the construction given the issue by the Patent Office, *held* that bars made by the junior party prior to the date of conception by the senior party, as shown by the latter's application, failed to show the invention in controversy.

No. 392.   Patent Appeals.   Submitted January 10, 1907.   Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed*

The Court in the opinion stated the facts as follows:

Albert L. Johnson appeals from the decision of the Commissioner of Patents awarding priority to William Mueser of the invention of the following issue of interference:

"1. A metal bar having substantially the same cross sectional area throughout its length, for use as a core to be imbedded in concrete, the surface of all the sides of which is provided

with a large number of interruptions of its continuity, whereby it presents a substantially continuous but actually much ·interrupted surface.

"2. A compound bar or unit of construction consisting of a metal bar having substantially the same cross sectional area throughout its length, and the surface of all of its sides provided with a large number of interruptions of its continuity, whereby it presents a substantially continuous but actually much interrupted surface, imbedded in an envelope of concrete."

William Mueser's application was filed July 6, 1903; Johnson's on February 19, 1904. The issue covers a part only of the claims of Johnson. On November 2, 1904, Mueser filed a motion to dissolve the interference, on the grounds of no interference in fact, irregularity in declaration, and that Johnson had no right, under his application, to make the claims of the issue. Johnson also moved to dissolve on the ground of irregularity and want of patentability of the claims of the issue. The irregularity alleged was that the claims are obscure and vague. Want of patentable novelty was charged in that, first, the claims call for nothing more than the roughening of a plain bar; and, second, because anticipated by a number of patents named, including one issued to him September 19, 1899, No. 623,285.

The interference was suspended pending consideration of these motions by the Primary Examiner, to whom they were referred for action. The Examiner overruled both motions. Mueser acquiesced in the decision. Johnson appealed both to the Examiners-in-Chief, who refused to entertain the same for want of jurisdiction, under the Patent Office rules governing such procedure, and to the Commissioner. The latter affirmed the Primary Examiner in the following decision:

"The Examiner held that there had been no such irregularity in the declaration of the interference as to preclude proper determination of the question of priority of invention.

"It is contended by Johnson upon this appeal that there has been such irregularity in declaring the interference, for the reason that the claims corresponding to the issue are vague and indefinite.

"Johnson urges that the phrase 'a large number of inter-ruptions,' as used in the claims, is indeterminate, and also that the phrase 'whereby it presents a substantially continuous but actually much interrupted surface' is contradictory in its nature. While it is true that there are a larger number of 'interrup-tions' provided on the surface of the sides of the metal bar disclosed by one of the parties than by the other, still it is thought that this phrase is sufficiently definite to cover the generic invention. While it is possible that more definite language could be used in defining the structure than the state-ment which has been adopted, it is believed that the phrase defines the character of the surface of the bar with sufficient clearness to enable the award of a proper judgment of priority of invention. At all events, the language objected to by Johnson does not render the claims so vague and indefinite as to warrant the dissolution of the interference."

The interference proceeding was resumed before the Exam-iner of Interferences, who, in a decision carefully reviewing the questions in controversy, awarded priority to Mueser. This decision was in turn affirmed by the Examiners-in-Chief and the Commissioner.

*Mr. James A. Carr* and *Mr. Melville Church* for the ap-pellant.

*Mr. William Raimond Baird* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

The first contention of the appellant is that the decision be reversed on the ground urged in his motion to dissolve the interference, namely, that the invention of the issue is not patentable.

The attitude of the appellant is a peculiar one. He holds a patent issued in 1899, which, among other references, he claims to be an anticipation of this invention. His present application

was held by the office to cover the claims of the issue, which, when suggested to him, were immediately accepted. Had no interference been declared, he would have received a patent for them. In a case presenting a similar state of facts, this court, speaking through Chief Justice Alvey, said: "The question of patentability of the claim for invention was referred to and passed upon by the Primary Examiner in the Patent Office, who is the expert as to the state of the art involved, and it was not until that examination was had and favorably reported, that the interference was or could be declared. The appellant making claim for an alleged patentable invention is not to be heard to urge non-patentability of his claim after it had been placed in interference with another claim. He is effectually estopped on that question by reason of his own affirmative assertion that his claim is patentable; and, if his own claim is patentable, that with which it would interfere may be equally so, if priority of invention be shown." Hisey v. Peters, 6 App. D. C. 68, 71.

The effect of this estoppel is sought to be avoided on · the ground that the question of patentability is jurisdictional. The argument is that patentability is not a mere "collateral question aside from the main question of the interference," but the essential foundation of the interference, without which it cannot be carried on; in other words, it is a jurisdictional fact which the court must find before it can proceed to adjudge priority. If this be true, the appellant is not estopped to raise the question, for his express consent could not confer jurisdiction. The same argument was met by the court in the opinion above quoted from, in these words following immediately thereafter: "Moreover, the rights of appeal in case of the refusal of a patent upon ·the ground of· non-patentability of the claim, and refusal of a patent because of interference with a prior right of invention, are distinct rights, and the latter does not involve the former. This is clearly indicated in the Revised Statutes of the United States, sec. 4911 (U. S. Comp. Stat. 1901, p. 3391), and in sec. ·9 of the act of Congress

of February 9, 1893, providing for the organization of this court." See also *Doyle* v. *McRoberts*, 10 App. D. C. 445.

In some cases since decided, it has been intimated that, under extraordinary circumstances, the question of patentability might be considered in an interference case, to prevent palpable injustice. But these expressions were not necessary to the determination of the cases; and in none since the organization of this court has the decision of the Commissioner been reversed upon any such ground.

In the latest case in which this question was discussed, it was said: "The decision that the issue is a patentable one, having been made in the Office and a patent issued thereon to Geen [one of the parties in interference], although it is confessed by the Examiner of Interferences that 'the invention is an exceedingly limited one,' is binding upon us on this appeal. Assuming, as we must, for the purposes of this case, that the original conclusion, arrived at, it appears, with considerable difficulty in the Office in passing upon Geen's application to patent, was a sound one, the single question for our determination is the disputed claim of priority between the patentee and the later applicant." *Kreag* v. *Geen* (Present Term), 28 App. D. C. 437.

In many other cases of doubtful patentability, in our unexpressed opinion, we have felt constrained to confine our consideration to the question of priority alone, for the reason that the statute does not give an appeal to this court from the decision of the Patent Commissioner affirming the patentability of a claimed invention. As was said by Mr. Justice Duell in the recent case of *Sobey* v. *Holsclaw*, 28 App. D. C. 65: "In interferences we do not determine whether either party shall receive a patent. The question presented to us is, conceding that there is a patentable invention, which party was the first to invent or discover the same? When an interference is returned to the Patent Office after we have decided the question of priority, it is within the power of the Commissioner of Patents to withhold a patent from the successful interferant. In such case, by an orderly system of appeals provided by the statute,

the action of the Commissioner of Patents may be reviewed on an *ex parte* appeal. It is only on such appeals that we can decide that a patent shall or shall not issue. Appeals frequently come to this court in *ex parte* cases where some claims have been allowed and others refused. The appeal is only before us to consider the correctness of the Commissioner's decision in disallowing the appealed claims. We may doubt the patentability of the allowed claims, but are without power to act. So, in interferences we may doubt the patentability of the issues, but we find no provision in the statute warranting us in overruling the deliberate decision of the Patent Office because of any such mere doubt. Authority to grant patents is vested in the Commissioner of Patents. If he errs and grants an invalid patent, his error is corrected by the court whenever the validity of the patent is questioned."

Without reciting the rules of the Patent Office regulating the procedure in interferences, which are set out in the brief for the appellant, and assuming, for the purposes of the argument, that they are binding upon this court, we see nothing in them negativing the views expressed. They have never been so interpreted in the Patent Office. The question of patentability is passed upon by the Primary Examiner of the particular department in the first instance. Then only can an interference be declared with another allowed application for the same invention. When declared, the question of priority goes to the Examiner of Interferences, and thence to the Examiners-in-Chief, the Commissioner, and finally to this court. If the question of patentability is raised by a motion to dissolve the interference, it is at once referred to the Primary Examiner, who gives a hearing and renders his decision. His decision is not appealable to the tribunals sitting in interference cases, but to the Commissioner in person. If the issue is held patentable the interference proceeds in the regular course on the issue of priority alone. This practice has been approved. *Allen* v. *United States,* 26 App. D. C. 8, 25; *United States ex rel. Lowry* v. *Allen,* 203 U. S. 476, 51 L. ed. 281, 27 Sup. Ct. Rep. 141.

If it were true, then, that the patentability of the issue is a

jurisdictional fact without which there can be no determination of priority of claim, the procedure above described could not reasonably have been upheld; and this court, moreover, would be compelled to pass upon the patentability of the issue, as a preliminary question, in every interference case, whether directly raised by the parties or not. To do this would be to exercise a general supervisory power over the administration of the Patent Office, not contemplated in the act creating this court and conferring upon it a limited appellate jurisdiction in certain cases. It must be borne in mind that the final judgment of this court entitling a claimant to a patent, in either an *ex parte* or an interference proceeding, is not conclusive of either patentability or priority. The patent, when issued, may be attacked in the courts by parties whose interests may be affected by the monopoly claimed thereunder; and the defeated party has another remedy by proceeding in a court of equity, as provided in sec. 4915, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3392).

It has become so much the practice, of late, to raise this question of patentability in interference cases, that we think it advisable to set it at rest, so far as this court may; trusting that if our judgment is erroneous it may be corrected by the court of last resort through some appropriate proceeding.

As regards the issue of priority, the burden upon the appellant, as the junior party, has been heavily increased by the unanimous decisions of the Patent Office tribunals.

The appellee, however, took no testimony, and is therefore confined to his record date, July 6, 1903, for his conception and reduction to practice. The appellant, Johnson, undertook to carry himself back of Mueser's alleged conception, on June 1, 1902, by testimony tending to show the construction of bars answering the description of the issue in 1898. That he made bars that were used in concrete construction was fully proved; but these were held by all the tribunals of the Office not to embody the issue.

In view of the prior state of the art, the invention was declared to be a narrow one, and was formulated on the descrip-

tion and claims of Mueser's application. In his application, Mueser referred to the fact that, in structures of this class, the strains to which they were subjected tend to cause a separation of the metallic core from the concrete envelope. He also said that the present state of the art shows that this separation is sought to be prevented by comparatively large shoulders on the metallic core, by reason of which the core is apt to be more compact in one place than another; and that such structural variations cause a substantial variation in the effective cross sectional area of the bar, which is, therefore, only as strong as its smallest cross sectional area. After stating some other defects of the construction he said: "The object of my invention is to overcome these disadvantages, and to that end I provide, as cores to be imbedded in concrete, metallic forms the surfaces of which are provided with a relatively large number of small interruptions of their continuity, whereby the bars or other metallic forms present as a whole substantially continuous surfaces, but actually possess surfaces with many interruptions. A core of this kind, being embedded in concrete, affords an enormously large number of points of resistance to any movement of the surrounding envelope. Its cross sectional area at any one place differs very slightly, if at all, from such area at any other place, and the resulting compound structure of steel and concrete is practically a monolith."

The drawings accompanying the application show cylindrical rods, some with indentations and some with projections in various forms, as well as rectangular bars, illustrating the construction described. After describing these particularly he says: "In all these different forms of my invention it will be observed that the substantially continuous surface and contour of the bar is preserved, while the surface is nevertheless provided with the numerous interruptions stated."

In the claim occur these words: "The surface of which is provided with a large number of interruptions of its continuity, whereby it presents a substantially continuous but actually much interrupted surface. The issue adopts these words, inserting after "surface" the words "of all the sides of."

Replying to Johnson's criticism of this language, the Primary Examiner, in deciding the motion to dissolve, said:

"That limitation of the claim, viz., 'the surface of all the sides of which is provided with a large number of interruptions of its continuity,' is further qualified by the suggestion, 'whereby it presents a substantially continuous but actually much interrupted surface.' This phrase is regarded by Johnson as paradoxical, or self-contradictory. But it is not so at all. A surface has not to be *entirely* free from interruptions of its continuity to be substantially *continuous*. Take Mueser's round bar as shown in his first sheet of drawings. A blunt pencil can be drawn on a straight line from end to end of it, on every side of it; can be drawn spirally around it, in a right-handed or left-handed turn; can be drawn peripherally and transversely around it zigzag-wise; and in any of said passages not encounter a single interruption. There is certainly a continuity of surface, and such a surface consistently also with a large number of interruptions of its continuity. Johnson also, by the truncation of two opposite corners of his bar, supplies the same sort of continuity of surface, and, remembering that his bars are to be made of indefinite length, he certainly provides the large number of interruptions. In fact it seems as if Mueser in hitting upon the phraseology of these counts had hit upon exactly the phraseology, if not indeed upon the only possible phraseology, to set out the characteristics common to both these devices."

The terms of the issue were considered sufficiently accurate by all of the tribunals passing upon the question of priority. After quoting the description in Johnson's application, the Examiner of Interferences, in construing the issue, said: "It is therefore necessary that the issue be construed to cover only structures in which, by reason of the arrangement of projections and spaces, the area of the projections shall be substantially equal to the area of the recesses cut by any transverse plane. The Office should not give so broad a construction to the terms of the issue as to enable it to include a structure which has been held to be patentably distinct therefrom." Citing *Breul* v.

*Smith,* 10 App. D. C. 180.   See also *Tracy* v. *Leslie,* 14 App.
D. C. 126; *Ruete* v. *Elwell,* 15 App. D. C. 21; *Podlesak* v.
*McInnerney,* 26 App. D. C. 399, 407.

Under the construction given to the issue, we are compelled
to agree with the tribunals below that Johnson's constructions
of 1898 do not embody the invention of the issue.

The projections upon one face of the sample bar, as shown
in the plaster reproduction of a part used in the construction of
the school building in St. Louis, do not register throughout with
corresponding depressions in the adjacent face; nor are the
corrugations upon the other sample bar arranged at all points so
as to be in the same plane with substantially similar depressions.
Johnson's own testimony, which is recited in the decisions of
the Examiner of Interferences and the Commissioner, and
need not be repeated, shows that the bars used in the school
building had only an approximate constant section, and that the
relative positions of the corrugations on the different sides of
the bar were altogether accidental in the process of rolling.   He
also admitted that the bar illustrated by figure 1 of his present
application is an improvement upon the former bar.   On this
point, also, the Examiner of Interferences refers to the oath
attached to Johnson's present application, filed February 4,
1904, in which he says that the invention claimed had not been
in public use for more than two years prior to that date; and
which could not be true if it was embodied in his bars applied
in building construction in 1898.   As these bars, therefore, do
not show the essential feature of the issue, namely, "substan-
tially the same cross sectional area throughout its length," they
do not show the invention in controversy.

There being no other evidence tending to show that Johnson
had the conception of the invention prior to filing his applica-
tion, he has failed to antedate the conception of Mueser shown
in his prior application.

The decision awarding priority to Mueser must therefore be
affirmed.   It is so ordered; and that this decision be affirmed to
the Commissioner of Patents as required by law.

*Affirmed.*

A petition by the appellant for a rehearing, filed February 23, 1907, was denied March 6, 1907. He then filed in this court a petition for a writ of error to the Supreme Court of the United States. It was also denied, but one of the Justices of that Court, on application of the appellant, granted the writ of error April 19, 1907.